## APPEAL OF PACIFIC REALTY CORPORATION.

### Docket No. 4526. Promulgated January 27, 1927.

1. The March 1, 1913, value of certain real estate, acquired by the petitioner prior to that date, determined.
2. The petitioner in computing its net income for the year 1919 is not entitled to deduct, as a debt ascertained to be worthless and charged off within the taxable year, the amount of the promissory note involved herein.

*Edwin C. Dutton, Esq.,* and *Don R. Hutchinson, Esq.,* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the Commissioner.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $16,214.02.

#### FINDINGS OF FACT.

The petitioner was, during the year 1919, a corporation organized and existing under the laws of the State of Washington, and was engaged in the business of selling real estate at Tacoma, Wash. The outstanding capital stock of the corporation was, during the year 1919, of the par value of $183,960, of which all but one share

was owned by James R. Thompson, president of the corporation. The corporation was dissolved in the year 1924.

During the years 1918 and 1919, the petitioner sold certain real estate, which it had acquired prior to March 1, 1913. The Commissioner, in computing the profits and losses from the sales, used as a basis therefor the cost of the real estate. The description of the real estate in question and the March 1, 1913, value thereof are as follows:

| Year. | Description. | March 1, 1913, value. |
|---|---|---|
| 1918 | Lot 9 Block 3 North Lake Subdiv. No. 1 | $1,800.00 |
| 1919 | Lot 10 Block 3 North Lake Subdiv. No. 1 | 1,800.00 |
| 1919 | Lot 2 Block 3 North Lake Subdiv. No. 1 | 1,800.00 |
| 1919 | Lot 3 Block 3 North Lake Subdiv. No. 1 | 1,800.00 |
| 1918 | Lot 13½–14 Block 20 North Lake Plat | 2,000.00 |
| 1919 | Lots 11–12 Block 17 North Lake Plat | 350.00 |
| 1919 | Lots 25–28 Block 21 and Lots 25–28 Block 26 Lake City | 200.00 |
| 1918 | Lot 6 Block 16 Manitou Grove | 300.00 |
| 1918 | Lot 2 Block 9 Maintou Grove | 350.00 |
| 1918 | Lot 4 Block 4 Manitou Grove (Inc. House) | 300.00 |
| 1918 | Lot 1 Block 15 Manitou Grove (Inc. House) | 300.00 |
| 1918 | Lot 3 Block 15 Manitou Grove (Inc. House) | 300.00 |
| 1918 | Lot 8 Block 10 Manitou Grove | 350.00 |
| 1918 | Lot 6 Block 9 Manitou Grove | 300.00 |
| 1918 | Lot 3 Block 6 Manitou Grove (House) | 300.00 |
| 1918 | Lot 9 Block 16 Manitou Grove | 300.00 |
| 1918 | Lot 2 Block 15 Manitou Grove | 250.00 |
| 1919 | Lot 5 Block 16 Manitou Grove (House) | 300.00 |
| 1919 | Lot 3 Block 16 Manitou Grove (House) | 300.00 |
| 1919 | Lot 1 Block 16 Manitou Grove (House) | 350.00 |
| 1919 | Lot 13 Block 16 Manitou Grove (House) | 300.00 |
| 1919 | Lots 10–11 Block 16 Manitou Grove (House) | 600.00 |
| 1919 | Lot 14 Block 16 Manitou Grove (House) | 350.00 |
| 1919 | Lots 9–10 Block 14 Manitou Grove (House) | 700.00 |
| 1919 | Lot 2 Block 14 Manitou Grove (House) | 300.00 |
| 1919 | Lot 7 Block 14 Manitou Grove (House) | 300.00 |
| 1919 | Lots 22–23 Block 2903 Oakland | 400.00 |
| 1919 | ½ Lots 14–15 Block 20 North Lake Plat | 3,000.00 |
| 1919 | Lot 11 Block 3 North Lake Subdiv. No. 1 | 2,160.00 |
| 1919 | Lot 6 Block 25 Manitou Acres | 700.00 |
| 1919 | Lot 1 Block 26 Manitou Acres | 500.00 |
| | Total | 23,060.00 |

Some time in the year 1909, James R. Thompson met one Frank H. Pilling, whom he had formerly known in Montana. Pilling informed Thompson that he was purchasing real estate in Tacoma and asked Thompson to endorse a check for him in the amount of $18,000. Thompson endorsed the check and Pilling obtained the money thereon. Subsequently, the check was returned, marked "no funds," and Thompson had to pay the amount thereof. Pilling thereupon turned over to Thompson certain real estate worth $800 and gave him his, Pilling's, note for $17,200, dated December 27, 1909, due in five years and bearing interest at the rate of 6 per cent from date, the interest being payable at the maturity of the note. From December 27, 1909, until the date the note matured, Thompson did not know where Pilling was and never saw him again until subsequent to June 24, 1919, although a short time prior to June 24, 1919, he had heard from some source that Pilling was cashier of a

bank at Everett, Wash. Thompson held the note in question until June 24, 1919, at which time no part of the principal or the interest due thereon had been paid. On that date, Thompson was indebted to the petitioner in the amount of about $39,000. The manager of the petitioner corporation, one Gamer, who owned the one share of the capital stock not owned by Thompson, suggested to Thompson that he should reduce his indebtedness. Thompson thereupon endorsed the note in question to the petitioner, without recourse, and in consideration thereof, his indebtedness to the corporation was canceled to the extent of $17,200, the face value of the note. Shortly thereafter Thompson met Pilling at Everett, Wash., and stated to him that he, Thompson, had transferred the note in question to the petitioner herein and that the petitioner would make trouble for him, Pilling, unless the note was paid. Pilling, who in fact was not the cashier of a bank, but was an employee of the Merchant's Association of Everett, said that he could not pay anything on the note at that time, but would try to pay it eventually. The petitioner, on November 17, 1919, brought suit against Pilling to collect the amount of the note and the interest due thereon. On November 29, 1919, Pilling filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on December 1, 1919. The petitioner did not further prosecute its action against Pilling on the note, but on December 5, 1919, filed a claim in the bankruptcy proceedings for the amount of the note and interest. Pilling was discharged from bankruptcy on March 18, 1920, and the petitioner received nothing on its claim. On December 31, 1919, the note in question was charged off as worthless on the petitioner's books, and in its income and profits-tax return for the year 1919 it deducted from gross income the amount of the note, $17,200, as a debt ascertained to be worthless and charged off within the taxable year. The Commissioner disallowed the deduction.

OPINION.

MARQUETTE: The petitioner alleges that the Commissioner erred in computing the profits and losses from the sale of the several parcels of real estate involved in this appeal, in that he used as a basis therefor the cost of the real estate rather than the March 1, 1913, value thereof. The Commissioner admits, in his answer, that such profits and losses were computed on the basis of cost.

The evidence herein establishes to our satisfaction that the several parcels of real estate were acquired by the petitioner prior to March 1, 1913, and that they had, on that date, the values set forth in the findings of fact. There appears to be no dispute between the petitioner and the Commissioner as to the cost of the real estate or

the amounts for which it was sold. On the sale of property acquired prior to March 1, 1913, profits should be computed by taking as a basis therefor the cost or March 1, 1913 value, whichever is higher, *Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, 255 U. S. 536, and losses should be computed by taking as the basis therefor the cost or March 1, 1913, value, whichever is lower. *United States* v. *Flannery*, 268 U. S. 98; *McCaughn* v. *Ludington*, 268 U. S. 106. The profits or losses arising from the sale of the real estate in question should be computed on that basis.

The only other question for determination is whether or not the petitioner, in computing its net income for the year 1919, should be allowed to deduct, as a debt ascertained to be worthless and charged off within the taxable year, the amount of the Pilling note. We are of the opinion, upon consideration of the evidence presented, that we would not be justified in allowing the deduction. The testimony as to this point is conflicting and we are not satisfied that the note had any value whatever when it was assigned by Thompson to the corporation, or that the transaction between Thompson and the corporation was a *bona fide* transaction between parties dealing at arm's length.

*Judgment will be entered on 15 days' notice, under Rule 50.*